UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ELISE CASTIEL, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br> v.<br><br>DYSON, INC.,<br><br>     Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

  Plaintiff Elise Castiel ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Dyson, Inc. ("Defendant") for the manufacture, marketing, and sale of consumer products sold under the Dyson brand name (the "Products"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF ACTION

  1. This is a class action against Defendant for the marketing, manufacture, and/or sale of consumer products (the "Products"), the warranties of which include statements that condition the continued validity of the warranty on the use of only an authorized repair service and/or authorized replacement parts (a "tying arrangement" or "unlawful repair restriction"). Tying arrangements that condition a consumer product's warranty on the use of a specific repair service in this manner violate state and federal law. Had Plaintiff – and all reasonable class members – been aware that the repair restriction was unlawful, they would not have purchased the Products, or would have paid significantly less for them.

1

2. Plaintiff brings her claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Products for: (i) violations of the Magnuson-Moss Warranty Act, (ii) unjust enrichment, (iii) fraud, (iv) fraudulent omission, and (v) violations of New York Gen. Bus. Law § 349.

**PARTIES**

3. Plaintiff Elise Castiel is, and at all times relevant to this action has been, a resident of Woodhaven, New York and a citizen of New York. In or about January 2020, Ms. Castiel purchased one Dyson V7 Cordless Vacuum Cleaner from a Home Depot in Ridgewood, NY for $299. Ms. Castiel purchased the Product, reasonably believing its warranty complied with state and federal law. However, the Product Ms. Castiel purchased did not comply with state and federal law because of the unlawful repair restriction attached to the warranty that prohibited her from repairing it. Ms. Castiel would not have purchased the Product, or would have paid significantly less for the Product, had she known that the Product did not comply with state and federal law. The warranty for Ms. Castiel's Product ended in January 2022. The warranty for the Product Ms. Castiel purchased is attached as Exhibit 9.

4. The Product that Ms. Castiel purchased began to malfunction slightly shortly after she purchased it. Specifically, the filter inside her Product stopped working correctly and would become clogged. By performing minor disassembly of the Product and removing the blockages in an attempt to fix the issue, Ms. Castiel voided the warranty coverage of her product during the warranty period, according to the language found in Defendants' warranty. Ms. Castiel did not want to send in the product for repair because she would have had to pay postage, mailing fees, and insurance out of pocket. She also would have assumed the risk of that the Product would be

damaged in-transit or lost on the way. Additionally, she would be deprived of the use of the Product for which she had paid for during the duration of any transport and repair.

5. Because Ms. Castiel's warranty has been unlawfully voided according to the terms of Defendant's warranty, Ms. Castiel's product was without warranty. This devalued Ms. Castiel's Product since a product that includes a warranty is worth more than a product that does not include a warranty.

6. Defendant Dyson, Inc. is an Illinois corporation with its principal place of business in Chicago, Illinois. Defendant generally oversees all aspects of the Products, including but not limited to their design, manufacture, marketing, and warranty services.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

8. This Court has general personal jurisdiction over Defendant because Defendant is incorporated and maintains its principal place of business in Illinois.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

**COMMON FACTUAL ALLEGATIONS**

**I.    Defendant's Business Activities**

10. Defendant manufactures and distributes consumer products to retailers throughout the United States, who then sell the products to consumers.

11. Defendant's products include vacuum cleaners, hair care products, air purifiers, and lamps sold under the "Dyson" brand name.

12. All the relevant Products include the same unlawful repair restriction in their warranties.[1]

13. Defendant has advertised, marketed, offered for sale, sold, and distributed products through authorized dealers to consumers.

14. Defendant's Products include a "written warranty" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6), in the form of a limited warranty ("Warranty Statement").

15. The length of the limited warranty Defendant offers for corded vacuums, hand dryers, and lights is five years.

16. The length of the limited warranty Defendant offers for cordless vacuums, fans and heaters, purifiers and humidifiers, hair dryers, hair stylers, and hair straighteners is two years.

17. Defendant's limited warranty includes the aforementioned unlawful repair restriction.

## II. Defendant Conditions Warranty Coverage On Unlawful Repair Restrictions

18. In numerous instances, Defendant, through its warranty statements on the Products, condition warranty coverage on using Defendant's repair services to perform maintenance and repair work, rather than allowing consumers to repair the product themselves or take it to a third-party repair service.

---

[1] Plaintiff reserves her right to amend the complete definition of the Products through facts obtained in discovery and further investigation.

19. Specifically, Defendant's warranty states: "Intentional cosmetic decoration or modification that may impact a product's resale, refurbishment, restoration or usability will void the terms of your product's warranty and the Dyson return policy."[2]

20. According to the warranty language, the Repair Restriction will void the warranty regardless of whether the limited warranty covers the issue. For example, the limited warranty "does not cover normal wear of parts."[3] Therefore, the Repair Restriction is unlawfully broad in that it does not only apply to covered warranty services.

21. The Warranty does not cover the "[r]emoval of blockages."[4] Thus, according to the language of Defendant's warranty, a client could void (and here, Ms. Castiel did void) their warranty by attempting to modify their product by repairing a blockage despite this particular repair not being covered by the warranty without charge.

22. In addition, Defendant's warranty states that "Faults caused by … Use of parts not assembled or installed in accordance with the instructions of Dyson … Use of parts and accessories which are not Dyson Genuine Components … [and/or] Repairs or alterations carried out by parties other than Dyson or its authorized agents" are "not covered" by Defendant's warranty.[5]

23. In addition, by choosing to offer a limited warranty rather than a full warranty, Defendant has chosen not to obligate itself to provide a truly free repair. This is because "limited warranties are not subject to section 2304, and, thus, the substantive remedies provided for that section, which include a full refund of the purchase price, are not available for a breach of a

---

[2] Ex. 9

[3] *Id.*

[4] *Id.*

[5] *Id*.

limited warranty." *Bollom v. Brunswick Corp.*, 453 F. Supp. 3d 1206, 1223 (D. Minn. 2020) (citing 15 U.S.C.A. § 2304).

24. Under the terms of the warranty, purchasers are bound only to use authorized repair services and are completely prohibited from modifying their products with non-authorized parts.

25. Defendants inform purchasers how to obtain authorized parts. Purchasers are directed to https://www.dyson.com/journey/overview, where purchasers may purchase authorized parts at a price premium. There is no option on this website to obtain free parts for Products that are still under warranty.

26. Under Defendant's warranty, Defendant, in effect,, provides parts that impede or precludes the choice by the consumer to perform necessary labor to install such parts.

27. By conditioning its warranty in this manner, Defendant has violated the tying prohibition in the Magnuson-Moss Warranty Act, which prohibits companies from conditioning their warranties on a consumer's use of any article or service (other than an article or service provided without charge under the terms of the warranty) identified by brand, trade, or corporate name.

28. Defendant's practices also violate state laws, as well as Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1), which prohibits unfair or deceptive actors or practices, as well as unfair methods of competition, in or affecting commerce. Section 5 also encompasses violations of the Sherman Act, which prohibits certain exclusionary and other anticompetitive conduct.

**III.   The Magnuson-Moss Warranty Act**

29. The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312, is the federal law that regulates consumer warranties and the procedures used to resolve warranty disputes. It also

directs the FTC to prescribe rules enforcing certain requirements pertaining to the use and content of consumer warranties.

30. 15 U.S.C. § 2302(c), prohibits any warrantor from conditioning a warranty on the consumer's using, in connection with the warranted product, any article or service (other than an article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name.

31. An FTC Rule interpreting this provision specifically addresses warranty language (nearly identical to Defendant's warranty):

> No warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty or unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C. 2302(c)). For example, provisions such as, "This warranty is void if service is performed by anyone other than an authorized 'ABC' dealer and all replacement parts must be genuine 'ABC' parts," and the like, are prohibited where the service or parts are not covered by the warranty. These provisions violate the Act in two ways. First, they violate the section 102(c), 15 U.S.C. 2302(c), ban against tying arrangements. Second, such provisions are deceptive under section 110 of the Act, 15 U.S.C. 2310, because a warrantor cannot, as a matter of law, avoid liability under a written warranty where a defect is unrelated to the use by a consumer of "unauthorized" articles or service.

16 CFR § 700.10(c)

**IV.     Section 5 Of The Federal Trade Commission Act**

32. The FTC has found that a "manufacturer's use of a repair restriction could be challenged as an unfair practice under Section 5 of the FTC Act if the repair restriction causes substantial injury (e.g., monetary harm or unwarranted health and safety risks) that is not

7

outweighed by countervailing benefits to consumers or competition that the practice produces, and the injury could not have been reasonably avoided by consumers."[6]

33. Section 5 of the Federal Trade Commission Act prohibits unfair or deceptive actors or practices, as well as unfair methods of competition, in or affecting commerce. Section 5 also encompasses violations of the Sherman Act, which prohibits certain exclusionary and other anticompetitive conduct. *See, e.g.*, *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992); *United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001).

34. The FTC has noted that "[r]estricting consumers and businesses from choosing how they repair products can substantially increase the total cost of repairs, generate harmful electronic waste, and unnecessarily increase wait times for repairs. In contrast, providing more choice in repairs can lead to lower costs, reduce e-waste by extending the useful lifespan of products, enable more timely repairs, and provide economic opportunities for entrepreneurs and local businesses."[7]

35. The FTC has issued several warning letters to companies that appeared to be engaged in warranty tying in violation of the Magnuson-Moss Warranty Act and has brought at least one enforcement action. *See, e.g.*, Exhibits 1-6.

36. This includes letters to companies like Defendant that offer ostensibly free repairs under the warranty.

---

[6] FEDERAL TRADE COMMISSION, NIXING THE FIX: AN FTC REPORT TO CONGRESS ON REPAIR RESTRICTIONS 14 (2021), https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf.

[7] FEDERAL TRADE COMMISSION, POLICY STATEMENT OF THE FEDERAL TRADE COMMISSION ON REPAIR RESTRICTIONS IMPOSED BY MANUFACTURERS AND SELLERS 1 (2021), https://www.ftc.gov/system/files/documents/public_statements/1592330/p194400repairrestrictionspolicystatement.pdf.

37. Microsoft, for example, was sent a compliance warning letter from the FTC for including a provision in the Xbox One warranty that stated that "Microsoft is not responsible and this warranty does not apply if Your Xbox One or Accessory is … repaired by anyone other than Microsoft." *See* Exhibit 1. This is despite the warranty stating that "Microsoft will (at its option) repair or replace it, or refund the purchase price to You." *See* Exhibit 7, at 2.

38. In response to this enforcement letter, Microsoft updated its warranty to remove the offending provision.[8]

39. The FTC has concluded that "it is clear that repair restrictions … steered consumers into manufacturers' repair networks or to replace products before the end of their useful lives."[9]

40. The FTC has also expressed concern that repair restrictions "may place a greater financial burden on communities of color and lower-income Americans."[10]

41. While manufacturers explain that these repair restrictions often arise from their desire to protect intellectual property rights and prevent injuries and other negative consequences resulting from improper repairs, the FTC has found that such justifications "should be rejected if found to be a mere pretext for anticompetitive conduct."[11]

---

[8] Shabana Arif, *Nintendo, Sony, and Microsoft Update Warranty Policies Following FTC Warning*, IGN (May 11, 2018), https://www.ign.com/articles/2018/05/10/nintendo-and-sony-update-their-warranty-policies-following-ftc-warning; *see also* Ex. 8 (Microsoft's updated warranty).

[9] NIXING THE FIX: AN FTC REPORT TO CONGRESS ON REPAIR RESTRICTIONS 6.

[10] *Id.* at 5.

[11] *Id.* at 10.

42. There is no justification for Defendant's repair restrictions since the technology inside many of Defendant's Products is well known and simple, and the repair restriction is irrelevant as to any consideration of personal injury or improper repairs.

43. Due to these factors, on July 21, 2021, the FTC unanimously voted to ramp up law enforcement against repair restrictions that prevent small businesses, workers, consumers, and government entities from fixing their products.[12]

## CLASS REPRESENTATION ALLEGATIONS

44. Plaintiff seeks to represent a class defined as all purchasers of Dyson branded products in the United States with warranty provisions that prohibit self-repair and/or the use of unauthorized parts (the "Class"). Excluded from the Class are persons who made such purchases for purpose of resale.

45. Plaintiff also seeks to represent a subclass of all Class Members who purchased Dyson branded products in the State of New York with warranty provisions that prohibit self-repair and/or the use of unauthorized parts (the "New York Subclass") (collectively with the Class, the "Classes").

46. Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

47. At this time, Plaintiff does not know the exact number of members of the aforementioned Class and New York Subclass ("Class Members" and "Subclass Members," respectively) but believes it numbers in the hundreds of thousands. Given the size of the

---

[12] https://www.ftc.gov/news-events/press-releases/2021/07/ftc-ramp-law-enforcement-against-illegal-repair-restrictions.

10

Defendant's operation and the number of retail stores in the United States selling Defendant's Products, Plaintiff believes that Class and Subclass Members are so numerous that joinder of all members is impracticable.

48. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual members of the Classes:

   (a) Whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

   (b) whether Defendant's conduct was unfair and/or deceptive;

   (c) whether Defendant has been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and the Classes;

   (d) whether Plaintiff and the Classes sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages;

   (e) whether Defendant's conduct violates the Magnuson-Moss Warranty Act; and

   (f) whether Defendant's conduct violates section 5 of the Federal Trade Commission Act.

49. Plaintiff's claims are typical of those of the Classes because Plaintiff, like all members of the Classes, purchased, in a typical consumer setting, Defendant's Products, and Plaintiff sustained damages on account of Defendant's wrongful conduct.

50. Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the Classes.

51. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, especially given the potentially low individual damages suffered by individual class members.

52. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. In addition, individual actions could be dispositive of the interests of the Classes even where certain Class or Subclass Members are not parties to such actions.

## COUNT I
### Violation Of The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

53. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

54. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

55. The Products are consumer products as defined in 15 U.S.C. § 2301(1).

56. Plaintiff and the Class and Subclass Members are consumers as defined in 15 U.S.C. § 2301(3).

57. Defendant is a supplier and warrantor as defined by the Warranty Act because they are suppliers or other persons who give or offer to give a written warranty or who are or may be obligated under an implied warranty. 15 U.S.C. § 2301(4) and (5).

58. No warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty or unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C. 2302(c)). 16 CFR § 700.10(c).

59. In connection with the marketing and sale of the Product, Defendant has conditioned a warranty on the consumer's using, in connection with the warranted Product, with the use of only an authorized repair service and/or authorize replacement parts. 16 CFR § 700.10(c).

60. In addition, warrantors offering a limited warranty that provides only for replacement of defective parts and no portion of labor charges, are prohibited from conditioning that the consumer use only service (labor) identified by the warrantor to install the replacement parts. A warrantor or his designated representative may not provide parts under the warranty in a manner which impedes or precludes the choice by the consumer of the person or business to perform necessary labor to install such parts. 16 C.F.R. § 700.10(b).

61. Defendant also violates this provision by requiring that any installation of parts on Defendant's products be performed with the authorization of Defendant.

62. By reason of Defendant's breach of warranties, Defendant violated the statutory rights due Plaintiff and the Class and Subclass Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby economically damaging Plaintiff and the Class and Subclass Members.

63. Plaintiff and the Class and Subclass Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Products if

13

they knew the truth about the unlawful nature of the Products or would have paid substantially less for them.

## COUNT II
## Unjust Enrichment

64. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

65. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

66. This claim is brought pursuant to the laws of the State of Illinois.

67. Plaintiff and members of the Classes conferred benefits on Defendant by purchasing the Product.

68. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class and Subclass Members' purchases of the Product. Retention of those moneys under these circumstances is unjust and inequitable because Defendant did not disclose that the repair restriction was unlawful and unenforceable. These omissions caused injuries to Plaintiff and Class and Subclass members because they would not have purchased the Products if the true facts were known or would have paid substantially less for the Products.

69. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

## COUNT III
## Fraud

70. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

71. Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

72. This claim is brought pursuant to the laws of the State of Illinois.

73. As discussed above, Defendant provided Plaintiff and members of the Classes with false or misleading material information about the Products.

74. Specifically, Defendant indicated to Plaintiff and members of the Classes that they would be unable to repair or use parts not authorized by Defendant on the products that they had just purchased. Defendant added this provision knowingly in order to encourage Plaintiff and members of the Classes to purchase new Products and/or replacement parts at inflated prices rather than repair older Products or purchase third-party parts.

75. Defendant misrepresented these unlawful repair restrictions as binding and enforceable even though such restrictions were explicitly unlawful according to FTC regulations and thus unenforceable.

76. These misrepresentations were made with knowledge of their falsehood.

77. The misrepresentations made by Defendant, upon which Plaintiff and members of the Classes reasonably and justifiably relied, were intended to induce, and actually induced Plaintiff and members of the Classes to purchase Products that they otherwise would not have or at least pay substantially more for the product than they would have.

78. The fraudulent actions of Defendant caused damage to Plaintiff and members of the Classes in the form of price premiums and are entitled to damages and other legal and equitable relief as a result.

## COUNT IV
**Fraudulent Omission**

79. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

80. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

81. This claim is brought pursuant to the laws of the State of Illinois.

82. This claim is based on fraudulent omissions concerning the unlawfulness of the repair restrictions that are included in Defendant's warranties. As discussed above, Defendant failed to disclose that the Products' repair restrictions were unlawful and unenforceable.

83. The false and misleading omissions were made with knowledge of their falsehood. Defendant manufactures, markets, and sells consumer electronics nationwide and knows that the FTC has stated that repair restrictions of the type that appears on Defendant's warranty are unlawful. Nonetheless, Defendant continued to include its unlawful repair restrictions on its Products.

84. The false and misleading omissions were made by Defendant, upon which Plaintiff and members of the proposed Classes reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the Classes to purchase Products that they otherwise would not have or at least pay substantially more for the Products than they otherwise would have.

85. The fraudulent actions of Defendant caused damage to Plaintiff and members of the proposed Classes, who are entitled to damages and punitive damages.

## COUNT V
### Violation Of New York Gen. Bus. Law § 349

86. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

87. Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

88. By the acts and conduct alleged herein, Defendant committed deceptive acts and practices concerning the unlawfulness of the repair restrictions that are included in Defendant's warranties. As discussed above, Defendant failed to disclose that the Products' repair restriction was unlawful and unenforceable.

89. The foregoing deceptive acts and practices were directed at consumers.

90. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the enforceability of the Product's repair restriction in a way intended to discourage legal repair of the Products.

91. Defendant's conduct is also misleading in a material way because, as discussed above, it fails to comport with Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as recognized by the Federal Trade Commission.

92. Plaintiff and New York Subclass Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Products or would have paid less for them if they knew the truth about the unlawful nature of the Products or would have paid substantially less for them.

93. On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover her actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT V
### Violation Of New York Gen. Bus. Law § 350

94. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

95. Plaintiff brings this claim individually and on behalf of the proposed New York Subclass against Defendant.

96. New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

97. Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

98. Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of GBL § 350.

99. Defendant's false, misleading, and deceptive statements and representations of fact were and are directed to consumers.

100. Defendant's false, misleading, and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

101. Defendant's false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

102. Defendant alone possessed the knowledge that the Products' warranty was unlawful.

103. As a result of Defendant's misrepresentations, Plaintiff and New York Subclass Members have suffered economic injury because they would not have purchased the Products or

would have paid less for them if they knew the truth about the unlawful nature of the Products' warranty.

104. On behalf of herself and other members of the New York Subclass, Plaintiff seeks to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the nationwide Class and New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass Members;

(b) For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) An award of statutory penalties to the extent available;

(f) For pre-judgment interest on all amounts awarded;

(g) For an order of restitution and all other forms of monetary relief; and

(h) For an order awarding Plaintiff, the Class, and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

Dated: June 1, 2023 Respectfully submitted,

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**

By: */s/ Carl V. Malmstrom*
      Carl V. Malmstrom

Carl V. Malmstrom
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
Facsimile: (212) 686-0114
E-mail: malmstrom@whafh.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*pro hac vice* forthcoming)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts
Julian C. Diamond (*pro hac vice* forthcoming)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: mroberts@bursor.com
       jdiamond@bursor.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis
954 Avenida Ponce De León
Suite 205, #10518
San Juan, Puerto Rico 00907
*Attorneys for Plaintiff and the Putative Classes*