```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION


Elise Castiel, individually  )
and on behalf of all others  )
similarly situated,          )
                             )
          Plaintiff,         )
                             )
                             )
     v.                      )   No. 23 C 3477
                             )
                             )
Dyson, Inc.,                 )
                             )
          Defendant.         )
```

Memorandum Opinion and Order

Plaintiff Elise Castiel filed this putative class action claiming that defendant Dyson, Inc., sold her and similarly situated consumers vacuum cleaners with a warranty whose terms allegedly violate the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312 (the "MMWA"). Her theory is two-fold: First, she claims that the warranty violates the MMWA's so-called "anti-tying provisions" by conditioning the warranty's continuing validity "on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance," and by requiring defendant's authorization prior to installing any parts on the product. Am. Compl. at ¶¶ 64-67. Second, and relatedly, she claims that pursuant to warranty terms providing that "[i]ntentional cosmetic decoration or

modification that may impact a product's resale, refurbishment, restoration or usability will void the terms of your product's warranty and the Dyson return policy," her warranty was unlawfully voided when she took the vacuum apart to remove debris after the filter became clogged. *Id*. at ¶¶ 5-7. Plaintiff characterizes these provisions as "unlawful repair restrictions" and claims that they caused her, and the absent class members, an economic injury: Had they known that the vacuum cleaners "did not comply with state and federal law because of the unlawful repair restriction attached to the warranty," either they would not have purchased the product at all, or they would have paid substantially less for it. *Id*. at ¶ 3. In addition to her MMWA claim, plaintiff asserts claims for violation of two New York consumer statutes and the Illinois common law of fraud, fraudulent omission, and unjust enrichment, all of which derive from her essential theory that the warranty at issue was unlawful. Defendant moves to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons below, I grant the motion.

The most salient problem with plaintiff's anti-tying allegations is that they are "flatly contradicted by the text of the warrant[y]." *Corn v. Target Corp*., No. 22 CV 4700, 2023 WL 3389027, at *6 (N.D. Ill. May 11, 2023). I may consider the warranty because plaintiff attaches it to her complaint. *Bogie*

2

*v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("[i]n considering a motion to dismiss under Rule 12(b)(6), district courts are free to consider any facts set forth in the complaint that undermine the plaintiff's claim. ... The freedom includes exhibits attached to the complaint[.]") (internal quotation marks and citations omitted); *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 787 (N.D. Ill. 2016) (considering warranties attached to complaint on motion to dismiss).

For example, in allegations purporting to describe the warranty's "Unlawful Repair Restrictions," plaintiff quotes the following warranty terms, which appear under the heading "What's not covered":

> Faults caused by … Use of parts not assembled or installed in accordance with the instructions of Dyson … Use of parts and accessories which are not Dyson Genuine Components … [and/or] Repairs or alterations carried out by parties other than Dyson or its authorized agents" are "not covered" by Defendant's warranty.

Am. Compl. at ¶ 26. But these terms simply set forth issues that are excluded from coverage under the warranty; they do not describe conditions affecting the validity of the warranty. At all events, plaintiff ultimately concedes that these terms do not violate the MMWA. *See* Opp., ECF 28 at 6 (acknowledging that these provisions are "permissible"). Plaintiff also alleges that

3

terms providing that "[a]ll work will be carried out by Dyson or its authorized agents" suggest unlawful tying. Am. Compl. at ¶ 22. But as defendant observes, these terms describe the services that Dyson will provide if a consumer seeks to take advantage of the warranty. They do not condition the warranty's continued validity on the consumer's use of defendant's services for services specifically excluded from coverage under the warranty.

Realizing, perhaps, that the warranty's terms delineating the scope of coverage and describing the manner in which defendant will provide warranted services do not violate the MMWA, plaintiff focuses her opposition on a single provision: that "[i]ntentional cosmetic decoration or modification that may impact a product's resale, refurbishment, restoration or usability will void the terms of your product's warranty and the Dyson return policy." Accordingly, the viability of her claim depends on whether she has stated an actionable injury arising out of this provision. I conclude that she has not.

To begin, there is a striking mismatch between plaintiff's theory of liability and her theory of harm. Plaintiff claims that defendant is liable for violating the MMWA because pursuant to the challenged provision, her warranty was "unlawfully void[ed]" when plaintiff took the vacuum apart to try and clear a blockage. But the only injury plaintiff claims to have

4

suffered as a result of the alleged violation—overpayment for the product—simply does not flow from her effort to remove the blockage. Conspicuously, plaintiff does not claim to have been denied warranty coverage for any service on the ground that she voided the warranty by trying to unclog the vacuum, nor does she claim that anyone speaking on behalf of defendant ever told her that the warranty would be considered void for that reason. Plaintiff instead treats "voidness" as if it were a self-executing condition triggered by plaintiff's own, subjective characterization of her conduct as the type of "modification" contemplated by the provision she challenges. From this already tenuous assumption, plaintiff leaps to the speculation that defendant *would have* denied any covered claim plaintiff *might have made* (but did not make) during the now-expired warranty period on the ground that defendant *would have* deemed the warranty void due to plaintiff's conduct, then draws the equally unsupported conclusion that the vacuum was "devalued" as a result. This entire theory amounts to conjecture in the extreme.

Moreover, the only "malfunction" plaintiff identifies as having occurred during the warranty period—that the vacuum filter "would become clogged"—is a condition the warranty explicitly excludes from coverage. So even assuming that by dismantling the vacuum to try and remove the clog, plaintiff undertook an act that would have allowed defendant to deem the

5

warranty void by its terms, she lost no benefit she would otherwise have had under the warranty. Viewed in this light, the parties' dispute over whether plaintiff's effort to unclog the vacuum can plausibly be construed as an "intentional cosmetic decoration or modification" is wholly academic because she does not claim any injury plausibly arising out of that conduct.

Indeed, the only injury plaintiff asserts is grounded in what courts sometimes refer to as the "price premium" theory: that plaintiff did not get the benefit of her bargain because she paid more for her vacuum than she would have paid had she known that the warranty contained allegedly unlawful terms. *See Gorczyca v. Weber-Stephen Prod. LLC*, No. 22-CV-04623, 2023 WL 6141489, at *2 (N.D. Ill. Sept. 20, 2023). But as the *Gorczyca* court observed, while the "price premium" theory "is recognized by courts as a cognizable injury," it is generally invoked "in cases where the alleged deception goes to the nature of the product itself." *Id*. Indeed, there have been only a handful of reported cases in which the theory was asserted in the context of an allegedly unlawful warranty—all brought by the law firm representing plaintiff in this case—and in all but one, the court declined to extend the theory to cases involving allegedly unlawful warranties. *See id.,* 2023 WL 6141489, at *2 (dismissing claim that warranty included repair restrictions that violated MMWA's anti-tying provisions and that the plaintiffs "would not

6

have purchased the product—or at the very least would have paid significantly less for it—had they known about the unlawful provision"); *Shaughnessy v. Nespresso USA, Inc.*, No. 22 CIV. 6815 (NRB), 2023 WL 6038009, at *2 (S.D.N.Y. Sept. 15, 2023) (dismissing claim that coffee maker was sold with a warranty that violated the MMWA's anti-tying provision, and that had the plaintiffs known about the unlawful warranty, they "would not have purchased the Product, or [ ] would have paid significantly less for the product."); *Ghaznavi v. De Longhi Am., Inc.*, No. 22 CIV. 1871 (KPF), 2023 WL 4931610, at *2 (S.D.N.Y. Aug. 2, 2023) (same); *Konkel v. Brother Int'l Corp.*, No. CV2200479ZNQRLS, 2023 WL 3585354, at *4 (D.N.J. May 22, 2023) (dismissing claim that the plaintiffs "purchased the Product, reasonably believing its warranty complied with state and federal law," but that "the Products [Plaintiffs] purchased did not comply with state and federal law because of the unlawful repair restriction attached to the warranty which prohibited [them] from repairing or modifying the Product.") (alteration in original); *Schaer v. Newell Brands Inc.*, No. 3:22-CV-30004-MGM, 2023 WL 2033765, at *1 (D. Mass. Feb. 16, 2023) (declining to dismiss the plaintiff's claim that she was "damaged by the warranty's repair restriction because she purchased a product which, according to Plaintiff's allegations, no longer included a limited warranty after her disassembly").

7

Of the four decisions above in which the court dismissed the complaint, all but one—*Gorczyca*—concluded that the injury alleged was insufficient to support Article III standing. I conclude that plaintiff's allegations narrowly satisfy the "irreducible constitutional minimum" of standing to pursue monetary relief under the law of this circuit, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992),[1] because the *type* of injury she asserts—overpayment for a product whose value she claims was less than the manufacturer represented[2]—is concrete and particularized. *See In re Aqua Dots Products Liability Litigation*, 654 F.3d 748 (7th Cir. 2011) ("[a]

---

[1] Although defendant does not challenge plaintiff's constitutional standing, I have an independent duty to ensure that I may properly exercise subject matter jurisdiction before adjudicating the merits of its arguments. Accordingly, I respectfully depart from the approach the court took in *Gorczyca*, where it acknowledged that in several of the cases it cited, the courts "focus[ed] their analysis on Article III standing" but declined to undertake an Article III inquiry, explaining: "Because the parties confined their arguments to statutory standing, the Court focuses on whether plaintiffs have statutory standing to bring their claims." 2023 WL 6141489, at *3, n. 3. Unlike Article III standing, "statutory standing" is not a jurisdictional concept. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128, n. 4 (2014) ("the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case.").

[2] As the *Shaughnessy* and *Ghaznavi* courts observed, that "the representation that a warranty is enforceable is implied, not explicit." *Shaughnessy* 2023 WL 6038009, at *7, citing *Ghaznavi*, 2023 WL 4931610, at *6. But I do not view that distinction as affecting the concrete and particularized nature of the injury she claims as opposed to her ability to allege plausibly that she suffered such an injury.

financial injury creates standing"); *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 697 (N.D. Ill. 2020) (plaintiff alleged "that she didn't get what she paid for. That's an injury."); *Muir v. Playtex Prod., LLC*, 983 F. Supp. 2d 980, 986 (N.D. Ill. 2013) (allegations that consumer overpaid for product based on allegedly false representations on product packaging satisfied Article III standing requirements). Whether the allegations in her complaint plausibly suggest that plaintiff actually suffered such an injury is another story.

Recall that plaintiff's theory is that she overpaid for her vacuum because she was unaware that defendant might have interpreted the warranty term concerning "intentional... modification" as including self-repair efforts such as the blockage removal she attempted as a basis for deeming the warranty invalid, and that doing so would violate the MMWA. But plaintiff never made any warranty claims, so defendant had no occasion to consider whether that term applied to her conduct, and nothing in the Amended Complaint plausibly suggests that the price plaintiff paid for the vacuum reflects any sort of expectation on her part about how defendant would interpret this (or any other) provision of the warranty. As the *Konkel* court observed:

> [I]f plaintiffs allege an economic injury as a result of a purchasing decision, they must do more than simply characterize that purchasing decision as an

9

> economic injury and must instead allege facts that would permit a factfinder to determine, without relying on mere conjecture, that ... plaintiffs failed to receive the economic benefit of their bargains.

*Konkel v. Brother Int'l Corp.,* No. CV2200479ZNQRLS, 2023 WL 3585354, at *6 (D.N.J. May 22, 2023) (internal quotation marks, alterations, and citations omitted). In cases such as *Geske* and *Muir*, where the plaintiffs claimed to have relied on explicit representations about the products made on labels and packaging, it was plausible to infer that the plaintiffs had considered the represented features when deciding whether to buy them and for what price. It is a much greater leap to suppose that a plaintiff's decision about whether to buy a product and how much to pay for it is influenced by implicit representations about the lawfulness of the manufacturer's warranty. Setting aside plaintiff's conclusory allegations on this score, nothing in the Amended Complaint suggest that she did so here. Nothing in *Schaer*—apparently the only case in which a claim such as plaintiff's has survived dismissal—persuades me otherwise. Among other reasons, the court did not consider whether the plaintiff's complaint plausibly suggested that her economic injury was caused by any implied representation concerning the validity of the manufacturer's warranty.

For the reasons discussed above, I conclude that plaintiff has not stated a plausible claim under the MMWA. Her remaining

10

claims do not require independent discussion. Plaintiff admits that her unjust enrichment claim and her claims under New York consumer statutes rise and fall with her MMWA claim. *See* Opp., ECF 28 at 7, 12. So, too, do her fraud claims, as the only false or misleading statements or omissions she identifies relate to the alleged unlawfulness of the warranty under the MMWA. Accordingly, defendant's motion to dismiss is granted. The amended complaint is dismissed in its entirety.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: February 13, 2024